UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MERRY L. DAVIS,

        Plaintiff,

Case No. 5:06-cv-44

v.

JOHN E. POTTER, Postmaster General

HON. GORDON J. QUIST

        Defendant.

_____/

**OPINION**

      Plaintiff, Merry L. Davis, filed suit against Defendant Postmaster General, John. E. Potter, alleging violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 791 and 794, the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, Michigan's Elliot-Larsen Civil Rights Act, M.C.L.A. 37.2101, *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act, M.C.L.A. 37.1101, *et seq.*, based on: (1) disparate treatment; (2) failure to accommodate; (3) retaliation; and (4) age discrimination. Defendant has filed a motion for summary judgment, and Plaintiff has not responded to the motion. For the following reasons, the Court will grant summary judgment in Defendant's favor.

**Facts**

      Davis started working for the Post Office in February 1985. On March 8, 2003, Davis was promoted to supervisor of customer service. Davis had knee surgery on September 24, 2003, and on November 10, 2003, she submitted a request for light duty status along with accompanying medical restrictions. (Def.'s Mot. for Summ. J., Ex. 1.) This request was approved on November

19, 2003. (*Id.*, Ex. 2.) On November 20, 2003, Davis submitted additional work restrictions from her doctor lasting six months. This was the last piece of medical information ever supplied to Davis' superiors regarding her medical conditions or restrictions. In September 2004, Davis was temporarily assigned to a supervisory position in the Central Forwarding Systems. On January 12, 2005, Davis received a 7-day suspension for failing to follow instructions regarding scheduling and leave procedures. (*Id.*, Ex. 4.) That same month, Davis was reassigned to Kentwood Station as a closing supervisor. This position was within her medical restrictions. On March 18, 2005, Davis was issued a letter of warning in lieu of a fourteen-day suspension for failing to ensure that all mail had been cleared from the building. (*Id.*, Ex. 5 at 1.) In April 2005, Plaintiff contacted an EEO counselor regarding some, but not all, of the aforementioned discipline events.[1]

On May 12, 2005, Davis was placed on a Performance Improvement Plan to address a number of identified performance deficiencies. (*Id.*, Ex. 8 at 1.) On August 11, 2005, Davis was issued another letter of warning in lieu of a seven-day suspension for failure to follow instructions. (*Id.*, Ex. 11 at 1.) On September 20, 2005, Defendant issued to Davis a proposed reduction in grade due to unsatisfactory performance. (*Id.*, Ex. 14 at 1.) Plaintiff appealed this decision and reached a settlement. Under the settlement, Davis agreed to be re-assigned as a PTF Clerk. (*Id.*, Ex. 16.) The settlement purported to be a complete and final settlement of all claims relating to her demotion. (*Id.*) Davis filed the present lawsuit on March 15, 2006. On November 9, 2007, Defendant moved for summary judgment. Davis did not respond to Defendant's motion within the time required by W.D. Mich. LCivR 7.2(c).

---

[1] Defendant argues that Davis did not properly exhaust her administrative remedies with regard to some of the events that now form the basis of her claims. While this may be true, the Court is omitting a more detailed discussion of the facts and procedural history because they are unnecessary to the Court's resolution of the case.

**Analysis**

*Legal Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

As noted above, Davis has failed to respond to the motion within the time prescribed by W.D. Mich. LCivR 7.2(c). Davis did not file a response with the Court until January 22, 2008. This was shortly before the Court was to file this Opinion and was more than two and a half months after Defendant filed his motion for summary judgment and more than a month and half after the deadline. W.D. Mich. LCivR 7.2(c) requires a party opposing a motion for summary judgment to respond within twenty-eight days after service of the motion. Not only did Davis fail to respond, she never requested an extension from the Court. By Davis not responding within the prescribed time limits (or filing an appropriate motion), the Court was left with the difficult task of trying to guess whether she wished to oppose the motion at all. In the face of Davis' silence, the Court was left with no option but to resolve Defendant's pending motion in a timely manner. Davis' late attempt to file a response without even an explanation for the delay is inexcusable and leaves the Court with only one

3

option: to reject Davis' response and proceed as if Davis did not respond at all.[2]

The Sixth Circuit has held that when no response is filed,

> a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.

*Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (noting that where the nonmoving party has not responded, a court's reliance on facts advanced by the movant is proper and sufficient). Particularly relevant to the present case, "[t]he party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations." *Leonard v. Robinson*, 477 F.3d 347, 354 (6th Cir. 2007).

### *ADA and State Law Claims*

In her complaint, Davis references the ADA as well as two Michigan civil rights statutes: the Elliot-Larsen Civil Rights Act and the Michigan Persons with Disabilities Civil Rights Act. However, only Congress has the authority to define when – and under what circumstances – a federal employer may be sued for employment discrimination. Davis' ADA claim is barred "because the ADA does not govern alleged discriminatory or retaliatory acts by the federal government." *Hiler v. Brown*, 177 F.3d 542, 544 (6th Cir. 1999). Thus, "an aggrieved federal employee alleging disability discrimination or retaliation can only seek monetary or equitable relief under the Rehabilitation Act." *Id.* Davis' state law claims are likewise barred. *Davis v. Runyon*, 1998 WL 96558, at * 5 (6th Cir. Feb. 23, 1998); *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) ("Federal

---

[2]The Court notes that Davis' attorney, Constance Ross, has engaged in similar dilatory tactics in a previous case before the undersigned. *James v. Benton Harbor Area Sch.*, 5:05-CV-171 (W.D. Mich.).

4

employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination."). Therefore, Davis may proceed with only her Title VII, Rehabilitation Act, and ADEA claims.

*Disparate Treatment*

Davis alleges that she was discriminated against on a prohibited basis. Although the specific count in her complaint mentions only her disability as the reason for her alleged disparate treatment, the Court will construe her complaint as also alleging disparate treatment on the basis of race and gender since she purports to bring a Title VII claim. However, the analysis for each is similar. *See Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (applying Title VII analysis to Rehabilitation Act). In such cases, "a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). If the plaintiff is "using circumstantial evidence to create an inference of discrimination, the complainant must carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer." *Id.* Should the plaintiff make out a prima facie case, the burden shifts to the employer to provide a legitimate non-discriminatory reason for the disparate treatment. *Id.* If the employer carries this burden, the plaintiff has the opportunity to show that those reasons were a pretext for discrimination. *Id.*

Davis has not put forward any evidence of direct discrimination. Thus, she has the burden of establishing a prima facie case of discrimination. As relevant to her disparate treatment claim

under either Tile VII or the Rehabilitation Act,[3] Davis must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. *Id.* at 415. In its motion for summary judgment, Defendant raises various arguments concerning whether Davis was a member of a protected class,[4] whether Davis suffered an adverse action, whether any adverse actions she may have suffered were properly exhausted, and whether some adverse actions were resolved in an internal settlement agreement between the parties. The Court finds analysis of the above issues to be unnecessary since Davis fails to establish that she meets one of the other necessary elements of proving a prima facie case of employment discrimination: that she was treated less favorably than other non-protected employees.

By not responding to Defendant's motion, Davis has failed to put forward any evidence supporting her claims. Although her pleadings do allege that she was reprimanded more severely than other non-protected employees, pleadings are insufficient at this stage of the litigation. Because she has not put forward evidence proving (or at least sufficient to create a genuine issue of material fact) that other non-protected employees were treated more favorably, Davis fails to carry her initial burden of proving a prima facie case of employment discrimination. Additionally, even if Davis did establish a prima facie case of employment discrimination, Defendant has put forward extensive evidence that Davis' reprimands and demotion were the result of a long-documented history of Davis being unable to follow instructions and unable to perform her job responsibilities in an adequate manner. By not responding to the motion or putting forward any evidence of her own, Davis does

---

[3] The Court will deal with her failure to accommodate claim under the Rehabilitation Act separately.

[4] Defendant raises this issue respecting Davis' Rehabilitation Act claim (namely whether she is disabled), not her Title VII claim.

6

not create a genuine issue of fact that these reasons were a pretext for discrimination. Therefore, Davis' disparate treatment claims under Title VII and the Rehabilitation Act fail.

*Failure to Accommodate*

Davis' second claim is that Defendant violated the Rehabilitation Act by failing to make reasonable accommodations for her disability. To succeed on her claim, Davis "must show that: (1) she is an individual with a disability; (2) she is qualified for the position; (3) the agency was aware of her disability; (4) an accommodation was needed because a causal relationship existed between the plaintiff's disability and her request for accommodation; and (5) the agency did not provide the necessary accommodation." *Amann v. Potter*, 105 F.App'x. 802, 805 (6th Cir. 2004). Although Defendant contests whether Davis is disabled within the meaning of the Rehabilitation Act, the Court finds resolution of the issue unnecessary.

Primarily, Davis' claim fails because she has offered no evidence suggesting how Defendant refused to accommodate her disability. Davis submitted work restrictions from her doctor in November 2003. The final letter from her doctor listed the restrictions as lasting six months. Consistent with this letter, Defendant approved placing Davis on light-duty work within her limitations. Although Davis was transferred in September 2004 and January 2005, her new responsibilities remained within her work restrictions. Thus, Davis has not submitted any evidence beyond her pleadings proving that the expired restrictions remained applicable or that Defendant unreasonably required her to work outside of those restrictions. Without more, Davis cannot prove that she required a reasonable accommodation and that Defendant refused her request for an accommodation. Therefore, Davis' failure to accommodate claim under the Rehabilitation Act fails.

*Retaliation*

Davis next claims that she was retaliated against for reporting that her supervisor was being paid for working nights even though he worked days. Although Davis does not allege whether the retaliation was in violation of the Rehabilitation Act or Title VII, the Court will analyze her claims under both statutes since the analysis is similar. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). "A prima facie case of retaliation has four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected." *Id.* Davis' claim fails, however, because she cannot show that by reporting her supervisor's fraud, she was opposing a practice made unlawful by either Title VII or the Rehabilitation Act. Since she cannot prove that she even had a good-faith belief that she was engaging in activity protected by either statute, she cannot state a retaliation claim based on those statutes.[5] Thus, Davis' retaliation claim fails.

*Age Discrimination*

Davis' final claim is that her demotion was age discrimination in violation of the ADEA. To establish a prima facie case of age discrimination, a plaintiff must show "that (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position, and (4) the successful applicant was substantially younger than the plaintiff." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998). Davis satisfies the first two elements because she was over 40 years of age at the time of her

---

[5] Davis' complaint did not allege that she was retaliated against based on her EEO complaint in April 2005. This claim would fail as well, however, because Defendant has put forward uncontested evidence that any subsequent adverse actions were taken without knowledge of her EEO activity. (Def's Mot. for Summ. J., Ex. 25 at 8).

demotion and a demotion is an adverse employment action. However, Davis cannot satisfy the fourth element of a prima facie case because she was not replaced by someone substantially younger than herself. Davis was 57 at the time of her demotion. Her replacement was 50. Her replacement by someone seven years younger, who is herself a member of the protected class, does not meet the requirement that she be replaced by someone substantially younger. *See Id.* Moreover, even if Davis did establish a prima facie case of age discrimination, she has not put forward any evidence that Defendant's legitimate reasons for her demotion were pretext for discrimination. Thus, Davis' ADEA claim fails.

### Conclusion

For the aforementioned reasons, the Court will grant summary judgment in Defendant's favor on all counts.

A separate Order will issue.


Dated: February 5, 2008                    /s/ Gordon J. Quist
                                          GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE